30 F.3d 80
 Ronald WHITE; Jodi White, Appellants,
v.
William MOULDER, in his official capacity as Chief of Police
of the City of Des Moines; Ronald Foster, individually and
in his official capacity as Police Officer of the City of
Des Moines, IA; David Noel, individually and in his
official capacity as Police Officer of the City of Des
Moines, IA; Polk County, IA; City of Des Moines, IA;
James Ramey, individually and in his official capacity as an
Assistant Polk County Attorney, Appellees.
 No. 93-1307.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 13, 1993.
Decided July 14, 1994.
Rehearing and Suggestion for Rehearing
En Banc Denied Aug. 1994.
 
 Alfredo Parrish, Des Moines, IA, argued for appellant.
 Mark Godwin, Des Moines, IA, appeared for James Ramey and Polk County and argued.
 Bruce Bergman, Des Moines, IA, appeared for other appellees and on the brief.
 Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.
 FAGG, Circuit Judge.
 
 
 1
 Des Moines police officer Ronald White supervised a search in which police officers seized ten $100 bills and a winning $50 lottery ticket from suspects accused of drug charges. Police officers photographed the seized currency and lottery ticket at the scene of the search. When the prosecution offered the seized evidence at the suspects' state court trial, the lottery ticket was missing and the exhibit envelope contained nine $100 bills, a $50 bill, two $20 bills, and a $10 bill. Believing someone had tampered with the evidence, the trial judge asked Ronald Foster and David Noel, Des Moines police officers who had been present at the search, to count the currency and prepare an inventory by denomination and serial number. Because the trial judge allowed the suspects to plead guilty to lesser charges, the trial ended and the exhibit envelope containing the currency was returned to the police department along with the officers' inventory.
 
 
 2
 During an investigation into the missing evidence, a police identification technician found Foster and Noel's inventory mistakenly listed the $50 bill twice and neglected to list the smaller bills. An identification sergeant notified Foster, who put the information in his field notes and also told Noel and Polk County Attorney James Ramey about the mistakes. Ramey told Foster he did not need the information from Foster's field notes at that time. A police investigator also learned that Officer White's spouse, Jodi White, cashed the missing lottery ticket the day after the search. About a month later, Ramey filed a state charge against Officer White for theft of the missing $100 bill and lottery ticket. The police department then dismissed Officer White from employment.
 
 
 3
 Before Officer White's trial on the theft charge, his attorney filed a motion to produce exculpatory evidence, but Ramey produced no evidence. At Officer White's trial, Ramey represented to the judge that the serial numbers on the currency in the exhibit envelope at the suspects' trial matched the serial numbers on the currency inventory prepared by Foster and Noel. After Ramey's representation proved untrue, Foster testified about telling Ramey of the mistakes in the inventory. Finding Ramey "knowingly, willfully, intentionally and deliberately suppressed exculpatory evidence," the trial judge struck the testimony about the currency seized in the search and instructed the jury to disregard all evidence about the currency. The jury acquitted Officer White. Officer White was later ordered reinstated on the police force with back pay.
 
 
 4
 Officer White brought this action under 42 U.S.C. Sec. 1983 against Des Moines Chief of Police William Moulder and the City of Des Moines, claiming his dismissal from the police force violated his right to due process. Officer White made additional Sec. 1983 claims against Foster, Noel, Ramey, and Polk County, claiming violations of his right to a fair trial. Officer White and Jodi White also made state law claims against Moulder, the City of Des Moines, Foster, Noel, Ramey, and Polk County, for intentional infliction of emotional distress. The district court granted summary judgment denying all the Whites' claims. The Whites appeal and we affirm.
 
 
 5
 Our review is limited to issues specifically raised and argued in the Whites' brief. See United States v. Simmons, 964 F.2d 763, 777 (8th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 632, 121 L.Ed.2d 563 (1992). We thus do not address Officer White's claims against Moulder and the City of Des Moines, which the Whites did not brief. As for the issues raised in the Whites' brief, we may affirm the district court's grant of summary judgment on any ground supported by record. See Cochenour v. Cochenour, 888 F.2d 1244, 1246 (8th Cir.1989).
 
 
 6
 On appeal, Officer White rests his Sec. 1983 claims on his assertion that he was denied his constitutionally protected right to a fair trial when Foster, Noel, and Ramey failed to disclose the evidence of mistakes in the currency inventory to Officer White or his attorney before Officer White's state court trial started. Our review of Officer White's Sec. 1983 claims necessarily begins with the threshold question of whether Officer White has been deprived of a constitutional right. See Baker v. McCollan, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). After considering Officer White's trial as a whole, we conclude Officer White has failed to show a constitutional violation because his trial was not fundamentally unfair. See Christman v. Hanrahan, 500 F.2d 65, 67-68 (7th Cir.), cert. denied, 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 644 (1974). Because the mistakes in preparing the currency inventory were discovered during Officer White's trial, Officer White's complaint is essentially about the timing of discovery of evidence Officer White considers favorable to his defense. See id. at 68. The delayed disclosure did not prejudice Officer White's defense, however, because the trial court effectively prevented unfair jury influence by striking all the evidence about the seized currency and directing the jury to disregard the evidence, and because Officer White was acquitted on theft of the $100 bill and the lottery ticket. Although the prosecutor's failure to respond to Officer White's motion to produce exculpatory evidence is inexcusable, the delay did not impair White's right to a fair trial.
 
 
 7
 Having concluded Officer White's failure to show a constitutional violation disposes of his Sec. 1983 claims against Foster, Noel, Ramey, and Polk County, we turn to the Whites' other claims. The Whites contend Ramey and Polk County intentionally inflicted emotional distress on the Whites when Ramey failed to produce the evidence about the mistakes in the currency inventory after Officer White's motion to produce was granted. We need not consider the merits of the Whites' emotional distress claims against Ramey and Polk County because Ramey and Polk County are entitled to absolute prosecutorial immunity from civil liability under Iowa law. Iowa follows the Imbler functional approach to prosecutorial immunity, giving county attorneys and the counties that employ them absolute immunity for activities that are " 'intimately associated with the judicial phase of the criminal process.' " Hike v. Hall, 427 N.W.2d 158, 159 (Iowa 1988) (quoting Imbler v. Pachtman, 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976)); see Hanson v. Flores, 486 N.W.2d 294, 295 (Iowa 1992) (immunity extends to county). Ramey's failure to produce evidence favorable to Officer White falls squarely within the protected prosecutorial function. See Imbler, 424 U.S. at 416, 430, 96 S.Ct. at 988, 995 (prosecutor absolutely immune from allegation he suppressed material evidence).
 
 
 8
 Even though Ramey is immune from tort liability to the Whites, Ramey is "amenab[le] to professional discipline by an association of his peers." See Imbler, 424 U.S. at 429, 96 S.Ct. at 994; Blanton v. Barrick, 258 N.W.2d 306, 311 (Iowa 1977) (to same effect). Indeed, the Iowa Supreme Court suspended Ramey's license to practice law based on Ramey's conduct at Officer White's trial. Committee on Professional Ethics & Conduct of the Iowa State Bar Ass'n v. Ramey, 512 N.W.2d 569 (Iowa 1994).
 
 
 9
 The Whites also contend Foster and Noel intentionally inflicted emotional distress on the Whites by failing to disclose the evidence about the inventory mistakes directly to Officer White or his attorney. To prevail on these claims, the Whites must prove outrageous conduct. See Cutler v. Klass, Whicher & Mishne, 473 N.W.2d 178, 183 (Iowa 1991). Because Foster and Noel satisfied their obligations to disclose exculpatory evidence when they told prosecutor Ramey about the mistakes in their inventory, see Walker v. City of New York, 974 F.2d 293, 299 (2nd Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1387, 122 L.Ed.2d 762 and cert. denied, --- U.S. ----, 113 S.Ct. 1412, 122 L.Ed.2d 784 (1993), we agree with the district court that Foster and Noel's failure to disclose the evidence to White or his attorney cannot be considered outrageous. The district court thus properly granted summary judgment for Foster and Noel on the Whites' emotional distress claims. See Cutler, 473 N.W.2d at 183 (court decides as a matter of law whether conduct may reasonably be considered outrageous).
 
 
 10
 Finally, the Whites challenge the district court's denial of the Whites' motion to amend their complaint to allege a conspiracy between Foster, Noel, Ramey, and Moulder to deny Officer White equal protection by withholding the evidence about the mistakes in the currency inventory. We conclude the district court did not abuse its discretion in denying the Whites' motion because the undisputed facts show the Whites do not have colorable grounds for relief on their conspiracy theory. See Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 224 (8th Cir.1994). It is undisputed Foster and Noel told Ramey of the mistakes and put the information in their field notes and that neither the police officers nor Ramey told Moulder about the mistakes. Additionally, the Whites were guilty of undue delay in filing their motion eleven months after their complaint was filed and after the district court granted summary judgment for two defendants. The district court was not persuaded to grant the Whites' tardy motion to amend their complaint because the case from another federal circuit on which the Whites relied for raising their conspiracy theory was decided ten months before the Whites filed their motion to amend. See id.
 
 
 11
 Accordingly, we affirm the district court.